IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DAWN FLORES, et al.,

           Plaintiffs,

v.                                               CIVIL ACTION NO.  2:12-cv-01804

ETHICON, INC., et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the plaintiffs' Motion to Remand [Docket 13]. The plaintiffs also seek sanctions. For the reasons discussed below, the motion to remand and the request for sanctions are **DENIED.**

I.      **Background**

This case is one of several thousand assigned to me by the Judicial Panel on Multidistrict Litigation (hereinafter the "MDL Panel"). It involves the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). Dawn Flores and her husband Alfred E. Flores (collectively "plaintiffs") allege that Mrs. Flores suffered injuries when the synthetic mesh product, Gynecare TVT Device 810041B from Lot 1097308 ("TVT device"), was implanted into her and then "eroded into adjacent pelvic organs causing infection, hematuria and necrosis resulting in substantial pain, suffering[, and] emotional and mental distress to Plaintiff, Mrs. FLORES." (Compl. [Docket 1-1], at ¶¶ 15–16). The Complaint alleges claims based on Mrs. Flores' injuries from the TVT device and Mr. Flores' loss of consortium.

The Complaint alleges the following causes of action: 1) negligence; 2) strict liability – design defect; 3) strict liability – manufacturing defect; 4) strict liability – failure to warn; 5) breach of express warranty; 6) breach of implied warranty; 7) loss of consortium; and 8) exemplary and punitive damages. (Compl. [Docket 1-1], at 1). The Complaint names as defendants: Ethicon, Inc. ("Ethicon"), Johnson & Johnson ("J&J"), Dr. Steven A. Scheuer, Greater Long Beach Genito-Urinary Medical Group Inc., St. Mary Medical Center, Dignity Health, and Does 1 to 100, inclusive. (*Id*. at ¶¶ 1-10). All defendants except Ethicon, J&J, and the Doe defendants are healthcare providers (hereinafter "healthcare defendants"). The healthcare defendants are all residents of California. (*See* Notice of Removal [Docket 1], at 2).

The plaintiffs' claims are based on the following alleged facts. The plaintiffs allege that the defendants "have consistently and repeatedly advertised, marketed and promoted synthetic mesh implants as being safe and effective for treating pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI")." (Compl. [Docket 1-1], at ¶ 12) (internal citations omitted). The plaintiffs allege this promotion was faulty for several reasons. First, studies had not evaluated the safety and effectiveness of these implants over the course of months or years and the FDA had not evaluated the safety of these implants for this use. (*Id*. at ¶ 12). Further, the plaintiffs allege that "[n]o clinical studies ever showed the advantage of mesh in treating prolapse over traditional repair." (*Id*. at ¶ 13). Second, they allege that the FDA has received "thousands of reports from numerous manufacturers including, but in no way limited to, Defendants, ETHICON and J&J, regarding the severe health complications" associated with the product, including:

> [b]leeding, vaginal infection or discharge, pain during sex, lower backache, erosion of the mesh through vaginal or pelvic tissue, bowel movement difficulties, bladder outlet obstruction, vaginal pain, vaginal scarring and shortening, and perceived protrusion from the vagina.

(*Id*. at ¶ 14).

Mrs. Flores alleges she was never warned of these risks nor did any advertisement for the TVT device mention them. (*Id.* at ¶ 15). When the healthcare defendants supplied the TVT device to Mrs. Flores to treat her SUI and/or POP, she was given no "notice, indication or explanation of the risks involved in being treated with a synthetic mesh product." (*Id.*) The device was inserted on December 29, 2003. The device was removed on July 21, 2011, by which time it had eroded into Mrs. Flores' pelvic organs "causing infection, hematuria and necrosis resulting in substantial pain" to Mrs. Flores. (*Id.* at ¶ 16). The complaint does not make any specific allegation as to when Mrs. Flores knew she had been injured by the TVT device. However, the plaintiffs' remand motion argues that Mrs. Flores "had no knowledge of her rights until the 'TVT Device' was removed . . . on July 21, 2011." (Pls.' Mot. Remand [Docket 13], at 11).

The plaintiffs originally brought this action on March 14, 2012 in the Superior Court of California, Los Angeles County. On May 1, 2012, a stipulation was entered wherein plaintiffs and defendant Dignity Health d/b/a St. Mary's Health Center stipulated that "the causes of action pled against or possibly applicable to, defendant Dignity Health, dba St. Mary Medical Center are plaintiffs' first cause of action for 'Negligence,' fifth cause of action for 'Failure to Warn,' sixth cause of action for 'Breach of Implied Warranty,' and seventh cause of action for 'Loss of Consortium.'" [Docket 25-2, at 10–11].

Ethicon and J&J removed this action to the Central District of California on May 12, 2012 on the basis of diversity jurisdiction, alleging that the nondiverse healthcare defendants were fraudulently joined. (Notice of Removal [Docket 1], at 1–2). The notice of removal argued that all of the plaintiffs' claims against the healthcare defendants were based on products liability, and in California, healthcare providers "are not sellers of products provided to patients

during the course of their treatment." (*Id*. at ¶ 27). Further, the negligence claim cannot be construed as one for medical negligence because it is not related to the professional services of the healthcare defendants but instead concerns the manufacturing, marketing, labeling, packaging, supplying, and selling of the allegedly defective product. (*Id*. at ¶¶ 28, 33). Therefore, the Complaint has not stated any valid claims against the healthcare defendants. On May 17, 2012, defendant Dignity Health d/b/a St. Mary's Health Center filed a notice of non-consent, indicating that it did not approve of the removal. [Docket 11].

On May 24, 2012, the plaintiffs filed a motion to remand back to state court [Docket 13]. After the motion was filed, the MDL Panel transferred the case to MDL 2327, In re: Ethicon, Inc. Pelvic Repair System Products Liability Litigation, and the Clerk assigned it Civil Action Number No. 2:12-cv-01804. The remand motion has been briefed and is ripe for review.

**II.     Legal Standard**

Under 28 U.S.C. § 1407, this court has authority to rule on pre-trial motions. In multidistrict litigation cases such as this, the choice-of-law for these pre-trial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted); *see Toll Bros., Inc. v. Dryvit Sys., Inc.*, 432 F.3d 564, 568 n.4 (4th Cir. 2005) (applying Connecticut state law in transferred multidistrict litigation case based on diversity jurisdiction and citing to *In re Temporomandibular Joint (TMJ) Implants Prods.*

4

*Liab. Litig.*, 97 F.3d at 1055); *Bradley v. United States*, 161 F.3d 777, 782 n.4 (4th Cir. 1998); *see also* 15 Charles A. Wright et al., *Federal Practice and Procedure*, § 3866 (3d ed. 2009).

The Honorable Shira A. Scheindlin has made a similar observation that the law of the transferee circuit applies:

> [C]ourts have held that the law of the transferee circuit controls pretrial issues such as whether the court has subject matter or personal jurisdiction over the action, or whether the cases should be remanded to state court because the cases were not properly removed.

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 241 F.R.D. 435, 439 (S.D.N.Y. 2007) (footnote omitted). Judge Scheindlin's observation, as noted in her opinion, reflects the general approach. *See*, *e.g.*, *In re Linerboard Antitrust Litig.*, No. MDL NO. 1261, Civ.A.04-4001, 2005 WL 1625040, at *4 (E.D. Pa. July 11, 2005) (applying the law of the Third Circuit on a motion to dismiss for lack of subject matter jurisdiction); *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 256 F. Supp. 2d 884, 888 (S.D. Ind. 2003) (applying the law of the Seventh Circuit on a motion for remand to state court). Because this is a case based on diversity jurisdiction, federal law controls procedural issues and state law controls substantive issues. Therefore, I will use the Fourth Circuit's standards for remand and fraudulent joinder, and California's law on the statute of limitations.

An action may be removed from state court to federal court if it is one over which the district court would have had original jurisdiction. 28 U.S.C. § 1441(a). Courts construe removal jurisdiction strictly because removal implicates significant federalism concerns. *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). The burden of establishing federal jurisdiction is on the party seeking removal. *Id*. Accordingly, when federal jurisdiction is based on diversity under 28 U.S.C. § 1332, the

defendant bears the burden of proving that the suit is between citizens of different states and that the amount in controversy exceeds the jurisdictional amount. *See Sayre v. Potts*, 32 F. Supp. 2d 881, 883-84 (S.D. W. Va. 1999), *abrogated on other grounds*, *Scaralto v. Ferrell*, 826 F. Supp. 2d 960 (S.D. W. Va. 2011).

Removal based on diversity jurisdiction requires complete diversity of all parties. 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. 267 (1806). No party involved in a diversity suit may share common citizenship with any party on the other side. *Strawbridge*, 7 U.S. 267. However, the judicially-created "fraudulent joinder" doctrine provides an exception to the complete diversity requirement, allowing a district court to assume jurisdiction even if there are nondiverse named defendants at the time of removal. *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). A finding of fraudulent joinder "permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.*

To show that a nondiverse defendant has been fraudulently joined, the removing party must establish either 1) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court or 2) that there has been outright fraud in the plaintiff's pleading of jurisdictional facts. *Id.* at 464. Accordingly, the removing party bears a heavy burden, as it "must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232-33 (4th Cir. 1993). As the Fourth Circuit has recognized, the fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Mayes*, 198 F.3d at 464 (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)). Moreover, the

court need not limit its jurisdictional inquiry to the facts alleged in the pleadings; the entire record may be considered as a whole in determining whether there is a basis for joinder. *Id.* (citing *AIDS Counseling and Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990)).

### III.     Discussion

As a preliminary matter, I will first address the plaintiffs' argument that removal was improper because it lacked the consent of all defendants. The plaintiffs argue that Dr. Scheuer has not appeared in this action, and thus has not consented to removal. (Pls.' Reply Defs.' Resp. Opp'n Mot. Remand [Docket 27], at 4). Dignity, the defendant hospital, agreed "that the causes of action plead [sic] against or possibly applicable to (DIGNITY) are Plaintiffs' First Cause of Action for 'Negligence', Fifth Cause of Action for 'Failure to Warn', Sixth Cause of Action for 'Breach of Implied Warranty' and Seventh Cause of Action for 'Loss of Consortium.'" (*Id*. at 4). Dignity also filed a "Notice of Non Consent to Federal Court Jurisdiction" [Docket 11]. Although typically all defendants must consent to removal, this rule does not apply to fraudulently joined defendants. *E.g. Justice v. Branch Banking & Trust Co*., No. 2:08-230, 2009 WL 853993, at *4 (S.D. W. Va. Mar. 24, 2009) (noting that although the general rule requires consent of all defendants, "application of this requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists") (quoting *Jernigan v. Ashland Oil, Inc*., 989 F.2d 812, 815 (5th Cir. 1993)); *United Computer Sys. Inc. v. AT&T Corp*., 298 F.3d 756, 762–63 (9th Cir. 2002); *Balazik v. Cnty. of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995). Therefore, the lack of consent by Dr. Scheuer or Dignity does not make removal improper.

Despite claims of strict liability in the Complaint, the plaintiffs expressly stated in their reply that "the strict liability claims for either design or manufacturing defect along with breach of express warranty and punitive damages are not plead against the California healthcare Defendants." (Pls.' Reply Defs.' Resp. Opp'n Mot. Remand [Docket 27], at 5). Therefore, I will consider only Count I (Negligence), Count IV (Strict Liability – Failure to Warn), Count VI (Breach of Implied Warranty), and Count VII (Loss of Consortium) to determine whether plaintiffs have any possibility of success on these claims.[1]

### A. Count I: Negligence

It is not entirely clear what kind of negligence claim the plaintiffs assert against the healthcare defendants. There appear to be three possibilities: 1) negligence in supplying the TVT Device; 2) negligence in failing to warn; and 3) medical negligence. I will evaluate all three to determine if there is any possibility the plaintiffs could establish a negligence cause of action against any healthcare defendant.

*1) Negligence – Supplying TVT Device*

In California, the elements of negligence are duty, breach of duty, proximate cause, and damages. *Berkley v. Dowds*, 152 Cal. App. 4th 518, 526 (2007). In Count I, plaintiffs allege that all defendants were negligent in their duty to "use reasonable care in designing, manufacturing, marketing, labeling, packaging, supplying and selling" the TVT device, and as a result of their negligence, Mrs. Flores suffered damages. (Compl. [Docket 1-1], at ¶¶ 16–19). In their Complaint at paragraphs 12–16, under "Facts Common to All Causes of Action," however, they only allege the healthcare defendants supplied the device. (*Id.* at ¶ 15). It was Ethicon and J&J

---

[1] In the removal and remand briefs, the defendants have not raised a statute of limitations issue. It appears the plaintiffs were aware of the injury by at least July 21, 2011, and they filed their Complaint within a year of this discovery date, on March 14, 2012.

who "designed, manufactured, marketed and distributed" the TVT device. (*Id*.) Therefore, as to the healthcare defendants, Count I alleges they were negligent in supplying the TVT device.

The Complaint says nothing about how the healthcare defendants were negligent in supplying the device. Although negligence can be pled in general terms, "there are limits to the generality with which a plaintiff is permitted to state his cause of action . . . ." *Berkley*, 152 Cal. App. 4th at 527 (internal quotations omitted); *see also Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 60 (1998) ("The complaint must indicate the acts or omissions which the plaintiff claims were negligently performed."). Unless the claim is for a failure to warn (discussed below), it is unclear from the Complaint what the healthcare defendants did or failed to do, other than give Mrs. Flores the device. Merely stating that the healthcare defendants gave her the device and that the device injured her is not sufficient. Even viewing the minimal facts alleged in the plaintiffs' favor, there is no possibility they can establish a cause of action for negligently supplying the device.

### 2) *Negligence – Failure to Warn*

In their reply, the plaintiffs assert that their Complaint alleges a product liability – negligent failure to warn claim because the defendants did not use reasonable care to warn about the product's dangerous condition or about the facts that make the product likely to be dangerous. (Pls.' Reply Defs.' Resp. Opp'n Mot. Remand [Docket 27], at 5–6). They cite as support paragraphs 12–16 of their Complaint, under "Facts Common to All Causes of Action." (*Id*.) The plaintiffs ignore, however, the fact that pleading negligent failure to warn requires an additional element that is absent from their Complaint. Cases cited by the plaintiffs themselves state that "[n]egligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the

9

acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about." *Carlin v. Superior Court*, 13 Cal. 4th 1104, 1112 (1996). As defendants Ethicon and J&J point out, the plaintiffs' Complaint does not allege that the healthcare defendants were unreasonable in their failure to warn. (Defs.' Resp. Pls.' Mot. Remand [Docket 26], at 8). The Complaint does not even allege that the healthcare defendants were aware or should have been aware of the risks from the TVT device, which would be necessary in alleging that they should have warned Mrs. Flores of said risks. The Complaint alleges only Ethicon and J&J knew of the risks, with no allegations as to whether they properly informed the healthcare defendants of what they knew. (Compl. [Docket 1-1], at ¶ 14). In fact, much of the Complaint alleges that the healthcare defendants were deliberately kept in the dark by Ethicon and J&J. (*Id.* at ¶ 34–36, 54). Because the plaintiffs have not alleged sufficient facts to support a negligent failure-to-warn claim, there is no possibility the plaintiffs could establish a negligent failure-to-warn claim against the healthcare defendants.

### 3) Professional or Medical Negligence

It is also possible that the plaintiffs could seek to state a claim against the healthcare defendants for medical negligence, also referred to as professional negligence. They have not done so in their Complaint. The elements of professional negligence are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Hahn v. Mirda*, 147 Cal. App. 4th 740, 746–747 (2007) (quoting *Budd v. Nixen*, 6 Cal. 3d 195, 200 (1971)). The plaintiffs do not allege in their Complaint that the treatment Mrs. Flores received fell below the standard of care in the medical

community, nor do they provide any facts that support that inference. The Complaint only alleges negligent acts by the healthcare defendants based on their duty to use "reasonable care" in supplying the device.

Therefore, because the negligence claim (Count I) either does not allege any conduct in which the healthcare defendants actually engaged, or if so, relates only to their failure to warn when supplying Mrs. Flores with the device, and the Complaint does not plead negligent failure to warn or medical negligence, this count does not state a claim against the healthcare defendants. In keeping with *Mayes*, I have also considered any additional information contained in the parties' briefs, but as the plaintiffs have nowhere added facts to support an inference of negligent failure to warn or medical negligence, I am constrained to conclude that there is no possibility the plaintiffs could establish any of these claims against the healthcare defendants

### B. Count IV: Strict Liability - Failure to Warn[2]

The plaintiffs allege the mesh product "was defective as a matter of law due to its lack of appropriate and necessary warnings" and therefore all defendants "are strictly liable . . . for designing, manufacturing, marketing, labeling, packaging, supply and selling a defective Product." (Compl. [Docket 1-1], ¶¶ 29–31). The plaintiffs fail to acknowledge settled California law that doctors and hospitals are typically not sellers of medical products but rather providers of services; they therefore cannot be held strictly liable. *See Carmichael v. Reitz*, 17 Cal. App. 3d 958, 979 (1971) (holding that doctor who prescribed a drug was not a seller of a product and therefore could not be held strictly liable); *Silverhart v. Mount Zion Hosp.*, 20 Cal. App. 3d 1022, 1027 (1971) (holding the rationale of *Carmichael* applies to hospitals because "a hospital

---

[2] The plaintiffs state in their reply that "[t]here is No Present Claim Against the California-Based Healthcare Defendants Based on Strict Liability," though they only mention strict liability based on design and manufacturing defect. ((Pls.' Reply Defs.' Resp. Opp'n Mot. Remand [Docket 27], at 5). Out of an abundance of caution, I will consider this count.

furnishing a surgical needle as part of the medical services it provides is not a seller engaged in the business of selling such needles but a user or consumer of such a needle"); *Hector v. Cedars-Sinai Med. Ctr.*, 180 Cal. App. 3d 493, 504 (1986) (finding hospital cannot be held strictly liable for a defective pacemaker because it is "a provider of services rather than a seller of a product").

### C. Count VI: Breach of Implied Warranty

The plaintiffs also allege a violation of an implied warranty "that the Product was merchantable and was fit for the ordinary purposes for which it was intended." (Compl. [Docket 1-1], at ¶ 41). The plaintiffs allege that Mrs. Flores, "individually and/or by and through her physician, relied upon Defendants' implied warranty of merchantability in consenting to have the Product implanted in her." (*Id.* at ¶ 43). The product was not fit for its intended uses, however, and caused Mrs. Flores bodily harm. (*Id.* at ¶¶ 44–46). This claim fails as a matter of law for the same reason that Count IV for strict liability fails: Dignity, as a hospital, is a provider of services, not a seller, and therefore should not be subject to liability without fault. *See Garza v. Endo Pharm.*, No. 12-1585-CAS (OPx), 2012 WL 5267897, at *2 (C.D. Cal. Oct. 24, 2012) ("Because under California law pharmacies primarily provide a service, not a product, a breach of warranty claim does not lie."); *Hector*, 180 Cal. App. 3d at 508 n.3 (dismissing warranty claims because hospital was not seller of pacemaker); *Shepard v. Alexian Brothers Hosp.*, 33 Cal. App. 3d 606, 615 (1973) (dismissing warranty claims against hospital relating to blood transfusion because "the liability imposed by strict liability in tort and breach of express and implied warranties is virtually the same, i.e., a form of liability without fault," and because the hospital was not a seller but a supplier of a service, liability without fault was inappropriate).[3]

---

[3] It is important to note that my decision is based on the fact that both strict liability and implied warranty in the medical context result in liability without fault to a service provider; it is not based on the idea that the implied warranty theory has been completely overtaken by strict liability. *See Morris v. Parke, Davis & Co.*, 667 F.Supp. 1332, 1350–51 (C.D. Cal. 1987) (noting that although "the California Courts have recognized that the implied

### D. Count VII: Loss of Consortium

The final claim in the complaint is on behalf of plaintiff Mr. Flores for loss of consortium. Because this claim is "derivative" of his wife's claims, its fate is directly determined by whether any of the other counts state a claim. *See Tucker v. CBS Radio Stations, Inc.*, 194 Cal. App. 4th 1246, 1256 (2011). Because there is no possibility that the plaintiffs could establish any of their other claims against the healthcare defendants, the loss of consortium claim similarly has no possibility of success.

### IV. Sanctions

In addition to seeking remand, the plaintiffs have asked for an award of sanctions in the amount of $10,750.00 pursuant to 28 U.S.C. § 1447(c) and/or Rule 11 of the Federal Rules of Civil Procedure. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). I **FIND** that defendants did not lack an objectively reasonable basis for seeking removal, and therefore, **DENY** the plaintiffs' request for sanctions under § 1447(c). Regarding Rule 11 sanctions, the plaintiffs have not complied with Rule 11(c)(2), which requires the motion be made separately. In any event, relief is not warranted under Rule 11 when the defendant's removal was valid, therefore I **DENY** relief under Rule 11 as well.

### V. Conclusion

After resolving all issues of fact and law in the plaintiffs' favor, I **FIND** that there is no possibility that the plaintiffs can establish a cause of action against the healthcare defendants.

---

warranty theory has been '*largely* superseded', and is '*usually* ignored' on appeal, this Court has been unable to find any authority for the proposition that the implied warranty theory has been *completely* replaced by the theory of strict products liability and no longer serves a useful purpose."). The plaintiffs do not have an implied warranty claim here because it is a form of liability with fault that California courts have ruled is inappropriate for service providers such as hospitals.

13

Therefore, I **FIND** that the healthcare defendants were fraudulently joined. Accordingly, it is **ORDERED** that the plaintiffs' Motion to Remand [Docket 13] is **DENIED**, and their request for sanctions also is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: April 4, 2013

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE